FILED

2010 Jun-08  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

**FIRST SOUTH FARM CREDIT, ACA**                    **PLAINTIFF**

**V.**                                           **CASE NO.** _____

**GREGORY T. SMITH; ROGER D. SANDERS;**
**JOHN THOMAS KELLEY; KAHLUA**
**CORPORATION, LLC; FOX FARMS, LLC;**
**FOREST HILL CONSTRUCTION COMPANY, INC.;**
**CARSON CREEK PROPERTIES, LLC;**
**BIRD DOG ALABAMA, LLC**                          **DEFENDANTS**

## COMPLAINT

First South Farm Credit, ACA ("First South") files this Complaint in the above-styled civil action. In support thereof, First South states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties and the subject matter herein pursuant to 28 U.S.C. § 1331 in that this civil action arises under laws of the United States and 28 U.S.C. § 1332 in that this is a civil action between citizens of different states and in which the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the actions giving rise to the causes of action herein took place in this District and Division.

## PARTIES

2.      First South is a federally chartered institution regulated by the Farm Credit Administration, with its principal place of business in the State of Mississippi.

3.      Gregory T. Smith ("Smith") is a resident of the State of Alabama who may be served with process at 13285 Fondren Road, Northport, Alabama  35475.

3326309.1/04540.34858

4.      Roger D. Sanders ("Sanders") is believed to be a resident of the State of Arkansas who may be served with process at 805 N. Division Street, Morrilton, Arkansas 72110 or 432 5th Street, Gordo, Alabama 35466.

5.      John Thomas Kelley ("Kelley") is believed to be a resident of the State of Florida who may be served with process at 13795 SE Powerline Road, Hobe Sound, Florida 33455 or 103 4th Avenue N.E., Aliceville, Alabama 35442.

6.      Kahlua Corporation, LLC ("Kahlua") is an Alabama limited liability company that may be served with process upon its registered agent for service of process, John Thomas Kelley, at 103 4th Avenue N.E., Aliceville, Alabama 35442 or 13795 SE Powerline Road, Hobe Sound, Florida 33455.  Kelley is the sole member of Kahlua.

7.      Fox Farms, LLC ("Fox Farms") is an Alabama limited liability company that may be served with process on its registered agent for service of process, John Thomas Kelley, at 103 4th Avenue N.E., Aliceville, Alabama 35442 or 13795 SE Powerline Road, Hobe Sound, Florida 33455.  Kelley is the sole member of Fox Farms.

8.      Forest Hill Construction Company, Inc. ("Forest Hill") is a Florida corporation that may be served with process upon its registered agent for service of process, Mario G. De Mendoza, III, at 12765 Forest Hill Blvd., Suite 1302, Wellington, Florida 33414.  Kelley is the sole member of Forest Hill.

9.      Carson Creek Properties, LLC ("Carson Creek") is an Alabama limited liability company that may be served with process upon its registered agent for service of process, Roger D. Sanders, at 432 5th Street, Gordo, Alabama 35466 or 805 N. Division Street, Morrilton, Arkansas 72110.  Sanders is the sole member of Carson Creek.

10.      Bird Dog Alabama, LLC ("Bird Dog") is an Alabama limited liability company that may be served with process upon its registered agent for service of process, John Thomas

Kelley, at 103 4th Avenue N.E., Aliceville, Alabama 35442 or 13795 SE Powerline Road, Hobe Sound, Florida 33455.  Kelley is the sole member of Bird Dog.

11.    Smith, Sanders, Kelley, Kahlua, Fox Farms, Forest Hill, Carson Creek, and Bird Dog are referred to collectively as "Defendants."

12.    Sanders, Kelley, Kahlua, Fox Farms, Forest Hill, Carson Creek, and Bird Dog are referred to collectively as "Non-Smith Defendants."

## FACTS

13.    Smith was an employee of First South, serving as office manager of First South's Northport, Alabama office.  Smith's employment with First South began in 1998.  In his capacity as office manager, Smith was responsible for making and servicing loans as well as managing the Northport branch and its personnel.

14.    Beginning in at least 2007, Smith and the other Non-Smith Defendants began engaging in an intentional, systematic scheme by which Smith misappropriated from First South (and without its knowledge and consent) for the benefit of himself, the Non-Smith Defendants and other third parties, a sum believed to be in excess of $2,680,000.00.

### A.  General Description of Scheme

15.    The scheme included, but is not necessarily limited to, the following actions:

a.    Smith making bogus loans using information obtained from files of other borrowers of First South and without those borrowers' knowledge or consent;

b.    Smith making advances under existing loans of First South borrowers and without those borrowers' knowledge or consent;

c.    Smith creating bogus notes in the names of existing First South borrowers and using a portion of the funds therefrom to pay down the borrowers' legitimate notes to

First South.  In some instances, additional bogus notes were issued in the borrowers' names to pay down prior bogus notes;

        d.     Smith extending the maturity dates on many of the loans of existing borrowers multiple times to create the impression that the loans were current;

        e.     Smith creating false documentation including, but not limited to, false loan applications, credit documents, title insurance policies, title opinions, and legal instruments.  Smith also made false entries in books, reports, records and other statements he provided to First South; and

        f.     Smith transmitting and Defendants receiving the fruits of this fraudulent scheme by use of the United States mail and wire systems.

### B.  Specific Loan Transactions Involved In Scheme[1]

16.    On or about February 6, 2003, Smith originated a loan in the amount of $46,225.00 in the name of Borrower A[2] for the purchase of cattle.  The loan proceeds were disbursed via check in the amount of $45,000.00 made payable to "[Borrower A]" and deposited in Borrower A's account at B.F. Goodrich Employee Federal Credit Union.  Smith modified this loan on February 26, 2004, March 28, 2006, May 30, 2006, August 30, 2006, February 28, 2007, and February 29, 2008, each time extending the maturity date on the loan.  Three payments received by First South on this loan were funds from subsequent loans Smith originated in the name of Borrower A on August 17, 2004, June 8, 2007 and April 25, 2008, the latter two being loans which are believed to have been originated without Borrower A's knowledge.  Cash

---

[1] Some of the transactions described herein may be legitimate.  However, discovery will be needed to further refine which transactions are legitimate and which are bogus.

[2] In order to protect confidential and financial information of these borrowers, their names will be filed under seal upon entry of an order permitting such and entry of a protective order in accordance with the E-Government Act of 2002 and other applicable law.  In the event discovery reflects that borrowers not already named as defendants are or may be co-conspirators with Defendants, First South reserves the right to amend this Complaint to add such borrowers as defendants.

payments were also made on this loan, one of which was made by Smith.  No other payments were made on this loan.  Smith's actions misrepresented to First South the true status of Borrower A's loans.

17.    On or about August 16, 2004, Smith originated a loan  in the amount of $27,838.00 in the name of Borrower A  for the purchase of a tractor.  The loan proceeds were disbursed via two checks.  One check in the amount of $25,000.00 was applied to an existing loan in the name of Borrower A which had been originated by Smith on or about February 6, 2003.  The other check in the amount of $2,512.13 was made payable to "Skyland Equipment," stamped "For Deposit Only Skyland Equipment" and deposited into an account at Regions Bank. Smith modified this loan on August 30, 2006, February 28, 2007 and August 30, 2007, extending the maturity date.  It is believed that the signature of Borrower A was forged on the modification documents.  A payment in the amount of $6,702.32 was made on this loan from proceeds of a subsequent loan originated by Smith in the name of Borrower A on or about June 8, 2007, which is believed to have been originated without Borrower A's knowledge.  On August 29, 2008, Smith applied $4,841.61 of the proceeds from a loan in the name of Borrower B, the brother-in-law of Sanders, to this loan.  On or about August 28, 2009, Kahlua made a payment in the amount of $14,500.00 on this loan.  Additionally, three cash payments in the amount of $4,900.00 on August 30, 2005, $1,000.00 on August 31, 2007, and $3,387.58 on November 30, 2007, were made on this loan.  No other payments were made on this loan.  Smith's actions misrepresented to First South the true status of Borrower A's loans.

18.    On or about November 29, 2004, Smith originated a loan in the amount of $254,700.00 to Borrower C, an Alabama corporation owned by Sanders, Borrower D and Borrower E for the purchase of real estate in Humphreys County, Mississippi.  The loan proceeds were wired to an escrow account belonging to Crook & Bridges at Guaranty Bank &

Trust in Belzoni, Mississippi.  From December 2006 through February 2007,  Smith made multiple misrepresentations to First South regarding payments to be made by Borrower C on this loan.   On February 12, 2007 and again on January 15, 2009, Smith made further misrepresentations to First South in Loan Monitoring Reports regarding the status of payments made on this loan and additional payments to be made by Borrower C.  Smith modified this loan on December 31, 2009, extending the maturity date and making misrepresentations regarding payments to be made by Borrower C.  It is believed that the signatures of the members of Borrower C were forged on the modification documents; nevertheless, Sanders benefitted from the modification.  On or about December 12, 2005, a payment in the amount of $9,029.03 drawn on an account at The Credit Union of Alabama was received by First South from Borrower D. On or about December 19, 2005, Sanders brought in an additional payment in the form of a cashier's check from Cadence Bank in the amount of $9,030.00 with Borrower F, Sanders' father, listed as remitter.  On this same date, a check in the amount of $9,029.03 drawn on an account at Great Southern National Bank was received by First South via mail from Borrower E. On or about December 29, 2006, Borrower D made a payment in the amount of $9,011.29 via a check drawn on Borrower D and Borrower D's spouse's account at BF Goodrich Employees Federal Credit Union.  On or about February 28, 2007, Sanders made a check payment in the amount of $9,100.00.  The following day, a check in the amount of $9,000.00 was received by First South from Sanders.  Five days later a cash payment in the amount of $180.00 was received by First South purportedly from Borrower D.  On or about December 21, 2007, Borrower D made a check payment in the amount of $9,057.47.  On or about December 28, 2007, Sanders made a payment in the amount of $9,057.47 via check drawn on an account at The Credit Union of Alabama.  Two days later, the spouse of Borrower D made a check payment in the amount of $9,347.64.  The following day, Borrower E made a check payment in the amount of $9,057.47.

On or about January 30, 2009, a payment in the amount of $18,490.81 was applied from proceeds of a loan originated by Smith in the name of Borrower E, which is believed to have been originated without Borrower E's knowledge.   On or about December 30, 2009, three checks, each in the amount of $9,000.00 were received by First South as payments on this loan. One check was drawn on Sanders' account at Alabama One Credit Union; another on Borrower D's account at Alabama One Credit Union; and the other on an account held jointly by Borrower E's son and spouse at Hancock Bank.   No other payments have been made on this loan.

19.     On or about February 25, 2005, Smith originated a loan in the amount of $12,425.00 to Sanders for the purchase of a farm truck.   The loan proceeds were disbursed via two checks, one in the amount of $10,193.29 made payable to "Roger D. Sanders, Tuscaloosa Credit Union" and the other in the amount of $1,906.71 made payable to "Roger D. Sanders." Smith modified this loan on April 28, 2006, extending the maturity date and making misrepresentations regarding payments to be made by Sanders on this loan.   It is believed that the signature of Sanders was forged on these modification documents; nevertheless, Sanders benefited from the modification.   On April 16, 2007 and December 19, 2008, Smith made further misrepresentations to First South in Loan Monitoring Reports regarding the status of payments made on this loan and additional payments to be made by Sanders.   On or about July 27, 2006, a check payment in the amount of $5,543.00 was received by First South as payment on this loan. On or about April 25, 2007, $4,761.63 of the proceeds of a loan originated by Smith in Sanders' name were applied as payment on this loan.   On or about March 31, 2008, a check in the amount of $13,500.00 was received by First South as payment on loans in Sanders' name, of which $4,676.82 was applied to this loan.   No other payments have been made on this loan.

20.     On or about June 25, 2005, Smith originated a loan in the amount of $262,000.00 in the name of Borrower G, an Alabama limited liability company owned by Sanders, his

mother, and his sister; for the purchase of real estate.  The loan proceeds were disbursed via five

checks: in the amount of $168,742.12 made payable to "Sanders Properties LLC, First National

Bank"; in the amount of $65,660.52 made payable to "Sanders Properties LLC, National Bank of

Commerce"; in the amount of $250.00 payable to "Sanders Properties LLC, J. Robert Lee"; in

the amount of $19,297.36 payable to "Sanders Properties, LLC"; and in the amount of $2,500.00

payable to "Newell Hocutt LLC, For Sanders Properties, LLC."  Smith modified this loan on

July 30, 2008, September 29, 2008, November 25, 2008, January 28, 2009, March 30, 2009, May

27, 2009, July 29, 2009, September 28, 2009, November 17, 2009, and February 23, 2010 to

change the maturity date on this loan making misrepresentations to First South regarding

payments to be made by Borrower G.  It is believed that signatures of the members of Borrower

G were forged on these modification documents.  The following payments were made via check

on this loan:  $2,300.00 on August 25, 2005; $2,350.00 on October 3, 2005; $2,300.00 on

November 3, 2005; $2,400.00 on March 1, 2006; $2,300.00 on May 2, 2006; $9,457.00 on July

27, 2006; $2,300.00 on September 29, 2006; $10,000.00 on November 24, 2006; $2,000.00 on

January 31, 2007; $8,000.00 on February 28, 2007; $2,300.00 on June 4, 2007; $11,500.00 on

July 26, 2007; $6,900.00 on September 24, 2007; $2,296.00 on December 28, 2007; $2,300.00

on January 29, 2008; $2,300.00 on February 29, 2008; $6,900.00 on March 28, 2008; $2,300.00

on June 17, 2008; $2,300.00 on July 14, 2008; and $160.00 on July 8, 2009.  Additionally, on or

about December 19, 2005, a payment was brought in by Sanders in the amount of $2,300.00 via

cashier's check drawn on Cadence Bank with Borrower F listed as Remitter.  On January 1,

2006, Borrower F made a payment in the amount of $2,300.00 via cashier's check drawn on

Cadence Bank.  No other payments were received by First South on this loan.

    21.    On or about September 7, 2006, Smith originated a loan in the amount of

$27,860.00 which Smith represented was to be made to Sanders for the purchase of farm

equipment. The loan proceeds were disbursed via check in the amount of $27,000.00 made payable to "Roger D. Sanders, The Credit Union of Alabama" which was endorsed by Sanders and deposited into an account belonging to Sanders at The Credit Union of Alabama. On April 16, 2007, December 19, 2008, March 27, 2009, April 17, 2009, August 25, 2009 and February 17, 2010, Smith made misrepresentations to First South in Loan Monitoring Reports regarding the status of payments made on this loan and additional payments to be made by Sanders. On or about April 25, 2007, $5,788.37 of the proceeds of a loan originated by Smith in Sanders' name was applied to this loan. On or about March 31, 2008, a check in the amount of $13,500.00 was received by First South as payment on loans in Sanders' name, of which $8,021.71 was applied to this loan. On April 27, 2009, a check in the amount of $9,000.00 from proceeds purportedly from the sale of a mobile home to Borrower E was applied to loans in the name of Sanders, of which $6,653.98 was applied to this loan. On or about March 5, 2010, a check in the amount of $9,600.00 drawn on an account at Alabama One Credit Union was received by First South as payment on loans in the name of Sanders, of which $7,195.47 was applied to this loan. No other payments have been made on this loan.

22.     On or about October 11, 2006, Smith originated a loan in the amount of $266,350.00 to Borrower H-1, Borrower I-1 and Borrower I-2 for the purchase of real estate. The loan proceeds were disbursed via check in the amount of $ 260,000.00 made payable to "Nathan G. Watkins, Jr. Attorney at Law for the Acct of: [Borrower H-1], [Borrower I-1] and [Borrower I-2]" and deposited into a trust account belonging to Nathan G. Watkins at Regions Bank. On or about October 29, 2007, the loan was modified to release Borrower H-1 from liability. In connection with this modification, Smith misrepresented to First South that Borrowers I-1 and I-2 made a principal payment of $100,000.00. Smith modified this loan again on or about October 22, 2009, extending the maturity date and making additional

misrepresentations regarding payments to be made by Borrowers I-1 and I-2 on this loan.  It is believed that the signature of Borrowers I-1 and I-2 were forged on these modification documents.  On or about October 16, 2007, a cash payment in the amount of $6,200.00 was made on this loan.  On or about October 17, 2008, a check in the amount of $21,350.38 was received by First South as payment on this loan.  On or about October 5, 2009, a payment via check in the amount of $19,222.53 was received by First South.  No other payments have been made on this loan.

23.     On or about November 29, 2006, Smith originated a loan in the amount of $12,760.00 which Smith represented to First South was to be made to Sanders for the purchase of a mobile home.  It is believed that Sanders' signature was forged on the documents relating to this loan.  Nevertheless, the loan proceeds were disbursed via check in the amount of $12,000.00 made payable to "Roger D. Sanders" and deposited into an account belonging to Sanders Properties.  Consequently, Sanders benefitted from this transaction.  Using the website for the Alabama Secretary of State, Smith caused information regarding this loan to be transmitted to the Alabama Secretary of State on or about October 2, 2006.  From December 1, 2006 through December 14, 2007, Smith made multiple misrepresentations to First South regarding location of the title to the mobile home intended to secure this loan.  On April 16, 2007, December 19, 2008, March 27, 2009, April 17, 2009, August 25, 2009 and February 17, 2010, Smith made further misrepresentations to First South in Loan Monitoring Reports regarding the status of payments made on this loan and additional payments to be made by Sanders.  On or about November 29, 2007, a check in the amount of $3,175.00 drawn on the account of Sanders at The Credit Union of Alabama was received by First South as payment on loans in the name of Sanders, of which $2,409.39 was applied to this loan. On or about February 29, 2008, a cash payment of $800.00 was made on loans in the name of Sanders, of which $35.00 was applied to this loan.  On or

about April 30, 2008, a cash payment in the amount of $760.00 was made on loans in the name of Sanders, of which $8.90 was applied to this loan. On or about August 29, 2008, a check in the amount of $800.00 was received by First South as payment on loans in the name of Sanders, of which $35.00 was applied to this loan. On or about January 16, 2009, a check in the amount of $4,800.00 drawn on Sanders' account at The Credit Union of Alabama was received by First South as payment on loans in the name of Sanders, of which $2,524.30 was applied to this loan. On or about October 23, 2009, a check in the amount of $2,672.36 drawn on an account at Alabama One Credit Union was received by First South as payment on loans in the name of Sanders, of which $1,907.36 was applied to this loan. On or about November 11, 2009, a check in the amount of $2,167.29 drawn on an account at Alabama One Credit Union was received by First South as payment on loans in the name of Sanders, of which $612.28 was applied to this loan. No other payments have been made on this loan.

24. On or about February 27, 2007, Smith originated a loan in the amount of $32,045.00 which Smith represented to First South was to be made to Borrower B to purchase a tractor and refinance a loan for other farm equipment. It is believed that Borrower B's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via two checks. One check in the amount of $22,200.00 was made payable to "[Borrower B] or The Credit Union of Alabama." It is believed this check was deposited in the account of Sanders at The Credit Union of Alabama. The other check in the amount of $9,000.00 made payable to "[Borrower B] or First National Bank" was deposited into the account of Borrower H at First National Bank. Smith modified this loan on or about March 28, 2008, April 29, 2008 and May 30, 2008 to extend the maturity date making additional misrepresentations regarding payments to be made by Borrower B. On or about March 5, 2007, Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State. On or about June 20, 2008,

a check drawn on a trust account belonging to Benchmark Title Company, Inc. in the amount of $111,087.02 was received by First South, of which $35,823.13 was applied to this loan.

25.     On or about April 24, 2007, Smith originated a loan in the amount of $ 76,135.00 which Smith represented to First South was to be made to Sanders to refinance his home and a portion of the outstanding debt owed to First South by Borrower C, an Alabama limited liability company owned by Sanders, Borrower D and Borrower E.  It is believed that Sanders' signature was forged on the documents relating to this loan.  Nevertheless, $10,550.00 of loan proceeds were applied to outstanding loans.  The remaining loan proceeds in the amount of $63,500.00 were wired to an account belonging to Benchmark Title Company, Inc. at Arvest Bank.  On December 19, 2008, March 27, 2009, April 17, 2009, August 25, 2009 and February 17, 2010, Smith made misrepresentations to First South in Loan Monitoring Reports regarding the status of payments made on this loan and additional payments to be made by Sanders.  On or about June 28, 2007, a cash payment in the amount of $800.00 was applied to this loan and represented to First South to have been collected by Smith.  An additional payment via check in the amount of $730.00 was made on or about July 30, 2007.  On or about August 30, 2007, another cash payment in the amount of $800.00 was applied to this loan.  On or about September 25, 2007, a check in the amount of $2,260.00 was received by First South as payment on this loan.  On or about November 29, 2007, a check in the amount of $3,175.00 drawn on the account of Sanders at The Credit Union of Alabama was received by First South as payment on loans in the name of Sanders, of which $765.61 was applied to this loan. On or about December 28, 2007, a payment in the amount of $767.83 via check drawn on an account at The Credit Union of Alabama was made on this loan.  On or about January 30, 2008, a cash payment in the amount of $780.00 was received by First South on this loan.  On or about February 29, 2008, a cash payment of $800.00 was made on loans in the name of Sanders, of which $765.00 was applied to this loan.  On or

about March 31, 2008, a check in the amount of $13,500.00 was received by First South as payment on loans in Sanders' name, of which $801.47 was applied to this loan. On or about April 30, 2008, a cash payment in the amount of $760.00 was made on loans in the name of Sanders, of which $751.10 was applied to this loan. On or about July 29, 2008, a payment in the amount of $1,541.47 was wired from the account of Sanders at AgFirst Farm Credit Bank as payment on this loan. On or about August 29, 2008, a check in the amount of $800.00 was received by First South as payment on loans in the name of Sanders, of which $765.00 was applied to this loan. On or about October 1, 2008, a check in the amount of $800.00 was received by First South as payment on this loan. On or about October 30, 2008, a cash payment in the amount of $746.00 was received by First South. On or about January 16, 2009, a check in the amount of $4,800.00 drawn on Sanders' account at The Credit Union of Alabama was received by First South as payment on loans in the name of Sanders, of which $2,275.70 was applied to this loan. On or about  January 26, 2009, a cash payment in the amount of $55.00 was received by First South. On April 27, 2009, a check in the amount of $9,000.00 purportedly from proceeds of the sale of a mobile home to Borrower E was applied to loans in the name of Sanders, of which $2,346.02 was applied to this loan. On or about May 26, 2009 a cash payment in the amount of $800.00 was made by Smith on this loan. On June 26, 2009, a cash payment in the amount of $780.00 was made by Smith on this loan. On or about August 24, 2009, a cash payment in the amount of $800.00 was made on this loan. On or about August 28, 2009, a payment via check drawn on an account at Alabama One Credit Union in the amount of $765.00 was made on this loan. On or about September 30, 2009, a cash payment in the amount of $800.00 was made by Smith on this loan. On or about October 23, 2009, a check in the amount of $2,672.36 drawn on an account at Alabama One Credit Union was received by First South as payment on loans in the name of Sanders, of which $765.00 was applied to this loan. On or

about November 11, 2009, a check in the amount of $2,167.29 drawn on an account at Alabama One Credit Union was received by First South as payment on loans in the name of Sanders, of which $1,555.01 was applied to this loan.  On or about March 5, 2010, a check in the amount of $9,600.00 drawn on an account at Alabama One Credit Union was received by First South as payment on loans in the name of Sanders, of which $2,404.53 was applied to this loan.  No other payments have been made on this loan.

26.     On or about May 24, 2007, Smith originated a loan in the amount of $30,925.00 which Smith represented to First South was to be made to Borrower B to purchase equipment.  It is believed that Borrower B's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $30,000.00 made payable to "The Credit Union of Alabama For the Account of: [Borrower B]."  It is believed this check was deposited into an account belonging to Sanders at The Credit Union of Alabama.   Smith modified this note on or about May 30, 2008 to extend the maturity date making misrepresentations to First South regarding payments to be made by Borrower B.  On or about June 20, 2008, a check in the amount of $111,087.02 drawn on a trust account belonging to Benchmark Title Company, Inc. was received by First South as payment on loans in the name of Borrower B, of which $34,454.14 was applied to this loan.  No other payments were made on this loan.

27.     On or about June 5, 2007, Smith originated a loan in the amount of $81,220.00 which Smith represented to First South was to be made to Borrower A to refinance an existing mortgage loan on Borrower A's farm.  It is believed that Borrower A's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via two checks.  One check in the amount of $54,350.00 was made payable to "Petit Jean State Bank."  It is believed this check was endorsed by Sanders and deposited in an account at Petit Jean State Bank.  The

other check in the amount of $24,495.00 was applied to two existing loans at First South in the name of Borrower A. Smith modified this note on June 27, 2008 and June 30, 2009, to extend the maturity date of the loan, each time making misrepresentations to First South regarding payments to be made by Borrower A. On or about April 28, 2008, Smith applied as payment on this loan $174.96, a portion of the proceeds from a subsequent loan in the name of Borrower A, which is believed to have been originated without Borrower A's knowledge. On or about August 29, 2008, proceeds from a loan in the name of Borrower B in the amount of $11,710.71 were applied to this loan. Additionally, on or about July 8, 2009, Kahlua made a payment in the amount of $20,000.00 on loans in the name of Borrower A, of which $10,042.03 was applied to this loan.

28.    On or about July 26, 2007, Smith originated a loan in the amount of $20,615.00 which Smith represented to First South was to be made to Borrower B to purchase cattle and hay. It is believed Borrower B's signature was forged on documents relating to this loan. The loan proceeds were disbursed via check in the amount of $20,000.00 made payable to "The Credit Union of Alabama For the Account of: [Borrower B]." It is believed that this check was deposited into an account of Sanders at The Credit Union of Alabama. On or about June 20, 2008, a payment in the amount of $22,302.84 was made via check in the amount of $111,087.02 drawn on a trust account belonging to Benchmark Title Company, Inc.

29.    On or about September 24, 2007, Smith originated a loan in the amount of $19,595.00 which Smith represented to First South was to be made to Borrower B for operating expenses to plant wheat. It is believed that Borrower B's name was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $18,760.00 made payable to "The Credit Union of Alabama For the Account of: [Borrower B]." It is believed that this check was deposited into an account belonging to Sanders at The Credit Union

of Alabama. Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about December 20, 2007. On or about June 20, 2008, a payment in the amount of $18,506.91 was made via check in the amount of $111,087.02 drawn on a trust account belonging to Benchmark Title Company, Inc.

30.   On or about January 9, 2008, Smith originated a loan in the amount of $134,300.00 which Smith represented to First South was to be made to Carson Creek, an Alabama corporation solely owned by Sanders, for the purchase of real estate in Conway County, Arkansas. The loan proceeds in the amount of $130,860.00 were disbursed via wire to Arvest Bank and deposited into the trust account of Benchmark Title Company, Inc. Smith modified this note on January 30, 2009, March 30, 2009, May 27, 2009, July 29, 2009, September 25, 2009, November 17, 2009 and February 23, 2010, making misrepresentations regarding payments to be made by Carson Creek on this loan. No payments have been made on this loan.

31.   On or about January 28, 2008, Smith originated a loan in the amount of $71,503.00 which Smith represented to First South was to be made to Borrower A to refinance a previous loan from First South. It is believed that Borrower A's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check made payable to "Petit Jean State Bank" in the amount of $69,873.00 and believed to have been deposited into an account at Petit Jean State Bank. Smith modified this note on January 28, 2009, April 30, 2009 and June 30, 2009 to extend the maturity date making misrepresentations to First South regarding payments to be made on this loan. On or about August 29, 2008, a payment in the amount of $1,447.68 from proceeds of a loan to Borrower B was applied to this loan. Additionally, on or about July 8, 2009, Defendant Kahlua made a $20,000.00 payment on

Borrower A's loans, $8,329.15 of which was applied to this loan.  No other payments have been made on this loan.

32.     On or about April 25, 2008, Smith originated a loan in the amount of $65,000.00 which Smith represented to First South was to be made to Borrower A for operating expenses and the purchase of cattle.   It is believed that Borrower A's si gnature was forged on the documents relating to this loan.  The loan proceeds were disbursed via five separate checks.  On or about April 25, 2008, a check in the amount of $11,338.00 was applied to prior loans of Borrower A at First South.   On this same date, a check in the amount of $38,500.00 made payable to "Petit Jean State Bank" was mailed via United States mail to Petit Jean State Bank in Morrilton, Arkansas and, upon information and belief, deposited into an account belonging to Smith.  On or about May 23, 2008, another check in the amount of $5,100.00 made payable to "Petit Jean State Bank" was mailed to Petit Jean State Bank and deposited into an account believed to belong to Smith at Petit Jean State Bank.  On or about June 5, 2008, a third check made payable to "Petit Jean State Bank" was issued in the amount of $5,500.00, mailed to Petit Jean State Bank and, upon information and belief, deposited into an account belonging to Smith at Petit Jean State Bank.  The last disbursement on this loan was made on or about September 5, 2008 in the amount of $2,512.00 and was also made payable to "Petit Jean State Bank."  It is believed this last disbursement was also mailed to Petit Jean State Bank and deposited into an account belonging to Smith.  Smith modified this note on April 30, 2009, June 30, 2009, July 29, 2009, September 25, 2009, November 17, 2009, and February 23, 2010 to change the maturity date, each time making misrepresentations to First South regarding payments to be made by Borrower A.  On or about July 8, 2009, Kahlua made a payment in the amount of $20,000.00 on Borrower A's loans, $1,628.82 of which was applied to this loan.  No other payments have been made on this loan.

33.     On or about May 21, 2008, Smith originated a loan in the amount of $128,320.00 which Smith represented to First South was to be made to Bird Dog, an Alabama limited liability company solely owned by Kelley, for the purchase of equipment.  It is believed that Smith falsified the collateral being offered as security for this loan, leaving First South wholly unsecured on this debt.  The loan proceeds in the amount of $125,000.00 were wired to Riverside National Bank for deposit into the account of Kelley.  Smith made misrepresentations in Loan Monitoring Reports on December 19, 2008 and March 27, 2009 regarding Bird Dog's failure to make payments and additional payments to be made on this loan.  On or about December 31, 2008, a payment in the amount of $23,570.41 was received by First South from Forest Hill.  On or about March 18, 2009, Forest Hill made another payment in the amount of $10,221.24 on loans in the name of Bird Dog, of which $148.85 was applied to this loan.  On or about May 18, 2009, a payment in the amount of $23,800.00 via check drawn on an account believing to Kelley at Riverside Bank was received by First South.  On December 14, 2009, Kahlua made a payment in the amount of $23,805.31.  On or about March 1, 2010, another payment in the amount of $10,074.66 via two checks drawn on the account of Kahlua at First National Bank was received by First South as payment on loans in the name of Bird Dog, of which $250.00 was applied to this loan.  No other payments have been made on this loan.

34.     On or about June 3, 2008, Smith originated a loan in the amount of $156,300.00 which Smith represented to First South was to be made to Carson Creek for the purchase of real estate in Perry County, Arkansas.  The loan proceeds were disbursed via check in the amount of $152,990.00 made payable to "Benchmark Title Company, Inc. For the Acct. of: Carson Creek Properties, LLC" and deposited into an account in the name of Benchmark Title Company, Inc. On or about June 24, 2009, a payment drawn on an account at Alabama One Credit Union in the

amount of $17,050.00 was received by First South on this account. No other payments have been made on this loan.

35.     On or about July 23, 2008, Smith originated a loan in the amount of $82,450.00 which Smith represented to First South was to be made to Bird Dog, an Alabama limited liability company solely owned by Kelley, for the purchase of equipment. It is believed that Smith falsified the collateral being offered as security for this loan, leaving First South wholly unsecured on this debt. The loan proceeds in the amount of $80,000.00 were wired to Riverside National Bank for deposit into an account belonging to Kelley. Smith made misrepresentations in Loan Monitoring Reports on December 19, 2008 and March 27, 2009 regarding Bird Dog's failure to make payments and additional payments to be made on this loan. On or about March 18, 2009, Forest Hill made a payment in the amount of $10,221.24 on loans in the name of Bird Dog, of which $10,072.39 was applied to this loan. On August 28, 2009, Kahlua made a payment on this loan in the amount of $9,820.00. On or about March 1, 2010, Kahlua made another payment via two checks drawn on Kahlua's account at First National Bank totaling $10,074.66 on loans in the name of Bird Dog, of which $9,824.66 was applied to this loan. No other payments have been received by First South on this loan.

36.     On or about August 28, 2008, Smith originated a loan in the amount of $29,797.00 which Smith represented to First South was to be made to Borrower B to purchase cattle and equipment. It is believed Borrower B's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via two checks. One check in the amount of $9,000.00 was made payable to "Petit Jean State Bank" and is believed to have been deposited into an account belonging to Smith at Petit Jean State Bank. The other check in the amount of $18,000.00 was used to make payments on the August 16, 2004, June 7, 2007, and January 28, 2008 loans in the name of Borrower A. A payment in the amount of $11,992.86 was

made on this loan via check in the amount of $12,000.00 from Kahlua on or about August 28, 2009. No other payments have been made on this loan.

37.     On or about October 1, 2008, Smith originated a loan in the amount of $21,315.00 which Smith represented to First South was to be made to Borrower A for the purchase of breeder cattle. It is believed that Borrower A's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $21,000.00 made payable to "Petit Jean State Bank For the Account of [Borrower A]." On or about November 5, 2009, Kahlua made payment in the amount of $5,200.00 on this loan. A cash payment in the amount of $75.00 was made by Smith on or about December 18, 2009. No other payments have been made on this loan.

38.     On or about October 13, 2008, Smith originated a loan in the amount of $75,790.00 which Smith represented to First South was to be made to Borrower B for operating expenses to plant wheat. It is believed Borrower B's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $75,000.00 made payable to "Morgan Stanley." Smith modified this loan on or about June 29, 2009, July 29, 2009, September 30, 2009, November 23, 2009, and February 23, 2010 to extend the maturity date and making misrepresentations to First South regarding payments to be made by Borrower B. On or about August 28, 2009, Kahlua made a $12,000.00 payment on loans in the name of Borrower B, $7.14 of which was applied to this loan. An additional payment in the amount of $4,340.00 made on Borrower B's loans was received by First South from Alabama One Credit Union on or about December 30, 2009, $361.38 of which was applied to this loan. No other payments have been made on this loan.

39.     On or about November 4, 2008, Smith originated a loan in the amount of $146,130.00 which Smith represented to First South was to be made to Borrower B to purchase

cattle and equipment. The loan proceeds were disbursed via four checks. Two checks, one in the amount of $500.00 and the other in the amount of $5,000.00, were made payable to "Petit Jean State Bank." A third check in the amount of $12,000.00 was made payable to "The Credit Union of Alabama." The fourth check in the amount of $125,000.00 made payable to "Riverside National" was deposited into the account of Forest Hill at Riverside National Bank. Smith modified this Note on November 23, 2009 and February 23, 2010 to extend the maturity date of the loan making misrepresentations to First South regarding payments to be made by Borrower B. No payments have been made on this loan.

40.     On or about December 3, 2008, Smith originated a loan in the amount of $42,400.00 which Smith represented to First South was to be made to Borrower A for farm equipment. It is believed that Borrower A's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $42,000.00 made payable to Riverside National Bank and deposited into an account belonging to Kelley. Smith caused information relating to this loan to be transmitted via internet to the Alabama Secretary of State on December 4, 2008. The only payment received by First South on this loan was in the form of a cashier's check in the amount of $10,000.00 drawn on The Credit Union of Alabama on or about May 26, 2009. No other payments have been made on this loan.

41.     On or about December 11, 2008, Smith originated a loan in the amount of $15,750.00 which Smith represented to First South was to be made to Borrower B to purchase farm equipment. It is believed that Borrower B's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $15,500.00 made payable to "Petit Jean State Bank." On or about December 30, 2009, a payment in the amount of $4,340.00 on loans in the name of Borrower B was received by First South from Alabama One

Credit Union, $3,832.58 of which was applied to this loan.  No other payments have been made on this loan.

42.   On or about December 30, 2008, Smith originated a loan in the amount of $24,250.00 which Smith represented to First South was to be made to Borrower B for the purchase of cattle.  It is believed that Borrower B's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $24,000.00 made payable to "Riverside National Bank" and were mailed via United States mail to Forest Hill, a Florida corporation owned by Kelley, and deposited into the account of Forest Hill at Riverside National Bank.  On December 31, 2009 and again on February 23, 2010, Smith modified the terms of payment on this loan to extend the maturity date making misrepresentations regarding payments to be made by Borrower B.  On or about December 30, 2009, a check in the amount of $4,340.00 was received by First South as payment on loans in the name of Borrower B, of which $88.56 was applied to this loan.  No other payments have been made on this loan.

43.   On or about January 21, 2009, Smith originated a loan in the amount of $18,500.00 which Smith represented to First South was to be made to Borrower G to refinance the second mortgage on a loan on which First South held a first mortgage.  It is believed that the signatures of the members of Borrower G were forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $18,000.00 made payable to "The Credit Union of Alabama" and deposited into the account of Sanders at The Credit Union of Alabama.  Smith modified this loan on or about January 27, 2010 to extend the maturity date on this loan making misrepresentations to First South regarding payments to be made by Borrower G.  It is believed that the signatures of the members of Borrower G were also forged on the loan modification documents.  No payments have been made on this loan.

44.     On or about January 30, 2009, Smith originated a loan in the amount of $44,900.00 which Smith represented to First South was to be made to Borrower E to refinance an existing loan for the purchase of a tractor and for additional capital. It is believed that the signature of Borrower E was forged on the documents relating to this loan. The loan proceeds were disbursed via two checks. One check in the amount of $18,490.81 made payable to "First South Farm Credit For the Acct. of [Borrower E]" was applied as payment on a note in the name of Borrower C, an Alabama corporation owned by Sanders, Borrower E and Borrower D. The other check in the amount of $25,359.09 made payable to "First National Bank" was deposited into an account at First National Bank in Gordo, Alabama. Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about January 30, 2009. Smith modified this loan on February 26, 2010 to extend the maturity date on the loan making misrepresentations regarding payments to be made by Borrower E. No payments have been made on this loan.

45.     On or about March 16, 2009, Smith originated a loan in the amount of $44,886.00 which Smith represented to First South was to be made to Borrower G to refinance an existing loan from another lender. It is believed that the signatures of the members of Borrower G were forged on the documents relating to this loan. The loan proceeds were disbursed in three checks. One check in the amount of $24,136.00 made payable to "Petit Jean State Bank" was mailed to Petit Jean State Bank and deposited into the account of Smith. Another check in the amount of $10,100.00 also made payable to "Petit Jean State Bank" is believed to have been deposited into the account of Smith. The third check in the amount of $10,250.00 made payable to "Riverside National Bank" was deposited into an account belonging to Forest Hill, a Florida corporation owned by Kelley, at Riverside National Bank. No payments have been made on this loan.

46.     On or about March 31, 2009, Smith originated a loan in the amount of $75,500.00 which Smith represented to First South was to be made to Borrowers I-1 and I-2 for the purchase of real estate.   It is believed that Borrowers I-1 and I-2's signatures were forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $75,000.00 made payable to "Compass Bank and [Borrower H-1]" and believed to have been deposited into an account belonging to Borrower H-1 at Compass Bank.   On or about July 28, 2009, $102,063.79 of the proceeds of a loan Smith originated in the name of Borrower J were received as payment on loans in the name of Borrower J, of which $102,063.78 was applied to this loan. No other payments have been made on this loan.

47.     On or about April 27, 2009, Smith originated a loan in the amount of $19,650.00 which Smith represented to First South was to be made to Borrower E for the purchase and set up of a mobile home.   It is believed that the signatures of Borrower E were forged on the documents relating to this loan.   The loan was disbursed via two checks.   One check in the amount of $10,000.00 made payable to "Alabama Credit Union" was deposited into an account at Alabama One Credit Union.   The other check in the amount of $9,000.00 was applied to an outstanding loan in the name of Sanders at First South.   No payments have been made on this loan.

48.     On or about May 12, 2009, Smith originated a loan in the amount of $228,930.00 which Smith represented to First South was to be made to Borrowers K-1 and K-2 for the purchase of real estate.  It is believed that the signatures of Borrowers K-1 and K-2 were forged on the documents relating to this loan.   The loan proceeds were disbursed via check in the amount of $223,800.00 made payable to "Mario G. deMendoza, P.A. Trust Account."   Mario deMendoza, counsel for Kelley, disbursed these funds to Kelley.   Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about

May 27, 2009. On or about January 27, 2010, $237,002.13 of the proceeds of another loan Smith originated in the names of Borrowers K-1 and K-2 were applied as payment on this loan.

49.      On or about May 19, 2009, Smith originated a loan in the amount of $39,085.00 which Smith represented to First South was to be made to Borrower D for the purchase of farm equipment. It is believed that Borrower D's signature was forged on the documents relating to this loan. A check in the amount of $38,000.00 was made payable to "Alabama One For the Acct. of: [Borrower D]" but was voided and not processed. A second check in the amount of $38,000.00 made payable to "Alabama One Credit Union and R.D. Sanders" was disbursed as the proceeds of this loan, endorsed by Sanders and deposited into Sanders' account at Alabama One Credit Union. Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about May 26, 2009. No payments have been made on this loan.

50.      On or about May 29, 2009, Smith originated a loan in the amount of $107,300.00 which Smith represented to First South was to be made to Borrower L for the purchase of farm equipment. It is believed that Borrower L's signature was forged on the documents relating to this loan. The loan proceeds in the amount of $105,000.00 were applied to a loan in the name of Borrowers M-1 and M-2 at First South. On or about November 12, 2009, two checks were received by First South from Borrowers M-1 and M-2 as payment on loans in the name of Borrower L, of which $109,749.76 was applied to this loan.

51.      On or about June 24, 2009, Smith originated a loan in the amount of $51,025.00 which Smith represented to First South was to be made to Borrower D for the purchase of farm equipment. It is believed that Borrower D's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $49,850.00 made

payable to "Alabama One Credit Union and R.D. Sanders" and deposited into Sanders' account at Alabama One Credit Union. No payments have been made on this loan.

52.     On or about June 30, 2009, Smith originated a loan in the amount of $25,240.00 which Smith represented to First South was to be made to Borrowers I-1 and I-2 for the purchase of farm equipment. It is believed that Borrowers I-1 and I-2's signatures were forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $25,090.00 made payable to "[Borrower H-1] & First South Farm Credit" and were applied to an existing loan at First South. Smith modified this loan on or about October 22, 2009, extending the maturity date and making misrepresentations regarding payments to be made by Borrowers I-1 and I-2 on this loan. It is believed that the signatures of Borrowers I-1 and I-2 were also forged on these modification documents. On or about July 28, 2009, $102,063.79 of the proceeds of a loan Smith originated in the name of Borrower J were received as payment on loans in the name of Borrowers I-1 and I-2, of which $0.01 was applied to this loan. No other payments have been made on this loan.

53.     On or about June 30, 2009, Smith originated a loan in the amount of $173,980.00 which Smith represented to First South was to be made to Borrower N for the purchase of farm equipment. The loan proceeds were disbursed via check in the amount of $170,000.00 made payable to "First National Bank & Kahlua Corporation, LLC For the Acct. of: [Borrower N]" and deposited at First National Bank in Gordo, Alabama. Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about July 1, 2009. No payments have been made on this loan.

54.     On or about July 10, 2009, Smith originated a loan in the amount of $6,150.00 which Smith represented to First South was to be made to Borrower G to refinance debt associated with medical bills. It is believed that the signatures of the members of Borrower G

were forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $6,000.00 made payable to "The Credit Union of Alabama" and deposited into an account belonging to Sanders at Alabama One Credit Union. On or about August 28, 2009, a payment was received by First South in the amount of $125.00 on this loan from Alabama One Credit Union. A cash payment in the amount of $125.00 was received by First South on or about January 28, 2010. Smith made additional cash payments on this loan on September 30, 2009 in the amount of $130.00, on October 23, 2009 in the amount of $125.00 and on February 25, 2010 in the amount of $125.00. No other payments have been made on this loan.

55.     On or about July 28, 2009, Smith originated a loan in the amount of $145,600.00 which Smith represented to First South was to be made to Borrower J, an Alabama limited liability company owned by the spouse of Borrower H-1, for the purchase of real estate. It is believed that the signatures of the members of Borrower J were forged on the documents relating to this loan. The loan proceeds were disbursed via four checks. One check in the amount of $24,304.00 made payable to "[Borrower H-1, Borrower H-2] & First South Farm Credit For the Acct. of [Borrower K]" was applied to an outstanding loan of [Borrowers H-1 and H-2]. A second check in the amount of $12,798.47 made payable to "[Borrower H-1] & First South Farm Credit For the Acct. of: [Borrower K]" was applied to a personal loan of Borrower H-1. A third check in the amount of $102,063.79 made payable to "[Borrower I-1] & First South Farm Credit For the Acct. of: [Borrower K]" was applied to a personal loan of Borrower I-1. The fourth check in the amount of $2,521.21 made payable to "[Borrower I-1] For the Acct. of [Borrower K]" was endorsed by Borrower I-1 and deposited into an account at RBC Bank. No payments have been made on this loan.

56.     On or about August 7, 2009, Smith originated a loan in the amount of $15,460.00 which Smith represented to First South was to be made to Borrower E for the purchase of farm

equipment.  It is believed that the signatures of Borrower E were forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $15,000.00 made payable to "Alabama One Credit Union" and deposited into the account of Sanders.  No payments have been made on this loan.

57.    On or about August 11, 2009, Smith originated a loan in the amount of $241,840.00 which Smith represented to First South was to be made to Borrower O, the former wife of Sanders, for the purchase of real estate.  The loan proceeds were disbursed via two checks.  One check in the amount of $234,700.00 made payable to "Heritage Title Co." was deposited into an escrow account belonging to Heritage Title.  The other check in the amount of $300.00 made payable to "Anthony Allison Appraisal Services" was never negotiated.  No payments have been made on this loan.

58.    On or about August 28, 2009, Smith originated a loan in the amount of $41,025.00 which Smith represented to First South was to be made to Borrower N for the purchase of farm equipment.  It is believed that Borrower N's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $40,000.00 made payable to "[Borrower N] and First National Bank" and deposited at First National Bank.  Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about September 10, 2009.  No payments have been made on this loan.

59.    On or about August 28, 2009, Smith originated a loan in the amount of $22,555.00 which Smith represented to First South was to be made to Borrower L for the purchase of farm equipment.  It is believed that Borrower L's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $22,000.00 made payable to "First South Farm Credit" and were applied to a loan in the names

of Borrowers M-1 and M-2. On or about August 31, 2009, Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State. On or about November 12, 2009, two checks from Borrowers M-1 and M-2 were received by First South as payment on loans in the name of Borrower L, of which $19,989.06 was applied to this loan.

60.     On or about September 10, 2009, Smith originated a loan in the amount of $46,095.00 which Smith represented to First South was to be made to Borrower N for the purchase of farm equipment and cattle. The loan proceeds were disbursed via two checks. One check in the amount of $25,000.00 made payable to "First National Bank" was deposited at First National Bank. The other check in the amount of $20,000.00 made payable to "Alabama One" was deposited into an account belonging to Sanders at Alabama One Credit Union. Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about September 10, 2009. No payments have been made on this loan.

61.     On or about September 24, 2009, Smith originated a loan in the amount of $25,250.00 which Smith represented to First South was to be made to Borrower N for the purchase of cattle. The loan proceeds were disbursed via check in the amount of $25,000.00 made payable to "First National Bank & Kahlua Corporation For the Acct. of: [Borrower N]." It is believed this check was then mailed via United States mail to Kahlua, an Alabama corporation owned by Kelley, and deposited into the account of Kahlua. Smith caused information regarding this loan to be transmitted via internet on or about September 25, 2009 to the Alabama Secretary of State. No payments have been made on this loan.

62.     On or about October 7, 2009, Smith originated a loan in the amount of $26,260.00 which Smith represented to First South was to be made to Borrower O for the purchase of real estate. It is believed that Borrower O's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via a check in the amount of $25,850.00 made payable

to "Alabama One Credit Union" and deposited into an account belonging to Sanders at Alabama One Credit Union. No payments have been made on this loan.

63.     On or about October 16, 2009, Smith originated a loan in the amount of $57,910.00 which Smith represented to First South was to be made to Borrower J, an Alabama corporation owned by the spouse of Borrower H-1, to refinance a loan from another lender. It is believed that the signature of the owner of Borrower J was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $56,250.00 made payable to "First National Bank" and deposited into an account at First National Bank of Central Alabama in Gordo, Alabama. No payments have been made on this loan.

64.     On or about November 5, 2009, Smith originated a loan in the amount of $35,870.00 which Smith represented to First South was to be made to Borrowers P-1 and P-2 for the purchase of a tractor. It is believed the signatures of Borrowers P-1 and P-2 were forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $35,000.00 made payable to "First National Bank" and deposited into an account at First National Bank in Gordo, Alabama. Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about November 10, 2009. No payments have been made on this loan.

65.     On or about November 11, 2009, Smith originated a loan in the amount of $29,200.00 which Smith represented to First South was to be made to Borrower O for the purchase of farm equipment. It is believed that Borrower O's signature was forged on the documents relating to this loan. The loan proceeds were disbursed via check in the amount of $29,000.00 made payable to "Alabama One Credit Union" and deposited into an account belonging to Sanders at Alabama One Credit Union. No payments have been made on this loan.

66.     On or about December 11, 2009, Smith originated a loan in the amount of $40,105.00 which Smith represented to First South was to be made to Borrowers P-1 and P-2 for the purchase of a tractor.  It is believed that the signatures of Borrowers P-1 and P-2 were forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $39,000.00 made payable to "First National Bank," believed to have been endorsed by Sanders and deposited into an account at First National Bank in Gordo, Alabama.  No payments have been made on this loan.

67.     On or about December 16, 2009, Smith originated a loan in the amount of $16,150.00 which Smith represented to First South was to be made to Borrower A  for operating expenses.  It is believed that Borrower A's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via check in the amount of $16,000.00 made payable to "Alabama One Credit Union" and were deposited into an account belonging to Sanders.  No payments have been made on this loan.

68.     On or about December 23, 2009, Smith originated a loan in the amount of $58,165.00 which Smith represented to First South was to be made to Borrower Q for the purchase of farm equipment and cattle.  It is believed that Borrower Q's signature was forged on the documents relating to this loan.  The loan proceeds were disbursed via three checks.  One check in the amount of $10,178.35 made payable to "First South Farm Credit For: [Borrower R-1] & [Borrower R-2]" was applied to an outstanding loan of Borrower R-1.  A second check in the amount of $7,521.65 made payable to "First South Farm Credit For: [Borrower R-1]" was applied to the account of Borrower R-1.  The third check in the amount of $39,000.00 was made payable to "[Borrower Q] and First National Bank" and deposited into an account at First National Bank of Central Alabama.  No payments have been received by First South from Borrower Q on this loan.

69.     On or about December 29, 2009, Smith originated a loan in the amount of $26,420.00 which Smith represented to First South was to be made to Borrowers P-1 and P-2 for the purchase of breeder cattle.  It is believed that the signatures of Borrowers P-1 and P-2 were forged on the documents relating to this loan.  The loan proceeds were disbursed via two checks.  One check in the amount of $22,840.00 made payable to "Alabama One Credit Union" was endorsed for deposit into an account belonging to Sanders at Alabama One Credit Union.  The other check in the amount of $2,800.00 was applied to a loan that Borrowers P-1 and P-2 obtained from First South on or about January 16, 2009.  No payments have been made on this loan.

70.     On or about January 27, 2010, Smith originated a loan in the amount of $257,800.00 which Smith represented to First South was to be made to Borrowers K-1 and K-2 for working capital, operating expenses and to refinance an existing loan from First South.  It is believed that the signatures of Borrowers K-1 and K-2 were forged on the documents relating to this loan.  The loan proceeds were disbursed via two checks.  One check in the amount of $20,000.00 made payable to "First National Bank and Kulaha [sic] Corporation" was deposited into an account of Kahlua at First National Bank in Gordo, Alabama after being endorsed by Kelley.  Another check in the amount of $500.00 made payable to "Rosen Hardwood" was issued but never negotiated.  The remaining proceeds in the amount of $237,002.13 were used to pay off the May 12, 2009 loan in the name of Borrowers K-1 and K-2.  No payments have been made on this loan.

71.     On or about February 11, 2010, Smith originated a loan in the amount of $68,735.00 which Smith represented to First South was to be made to Fox Farms, an Alabama limited liability company owned by Kelley, for the purchase of farm equipment.  The loan proceeds were disbursed via two checks.  One of these checks in the amount of $22,000.00 made

payable to "Alabama One & R. D. Sanders" was deposited into an account belonging to Sanders at Alabama One Credit Union.  The other check in the amount of $45,000.00 made payable to "Mario Mendoza, Trust Account" was endorsed by PNC Bank—Wellington County Plaza 955. Mario Mendoza, counsel for Kelley, then disbursed these funds to Kelley.  Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about February 12, 2010.  No payments have been made on this loan.

72.    On or about February 17, 2010, Smith originated a loan in the amount of $28,038.00 which Smith represented to First South was to be made to Borrower L to refinance an existing loan and to purchase farm equipment.  It is believed that Borrower L's signature was forged on the documents relating to this loan.  The loan proceeds were applied to a loan in the name of Borrowers M-1 and M-2.  No payments have been made on this loan.

73.    On or about March 1, 2010, Smith originated a loan in the amount of $150,000.00 which Smith represented to First South was to be made to Fox Farms for operating expenses. The loan proceeds were disbursed via three checks.  One of these checks was in the amount of $95,000.00 made payable to "Fox Farms, LLC" and deposited at First National Bank in Gordo, Alabama.  The other check in the amount of $10,000.00 made payable to "[Borrower S] for the acct. of Fox Farms, LLC" was deposited at West Alabama Bank and Trust.  Two days later, an additional disbursement was made on this loan in the amount of $27,000.00 via check made payable to "R D Sanders and Alabama One Credit Union."  This check was endorsed by Sanders and deposited into an account at Alabama One Credit Union.  Smith caused information regarding this loan to be transmitted via internet to the Alabama Secretary of State on or about March 2, 2010.  No payments have been made on this loan.

## C. Use of Misappropriated Funds.

74.     Some of the funds Smith misappropriated from First South were used for his personal benefit.

75.     The non-Smith Defendants received substantial amounts of the misappropriated money with full knowledge that they had not signed loan documents or any legal instruments that would entitle them to receive the funds.

76.     A substantial amount of the misappropriated funds were deposited in accounts with Petit Jean State Bank of Morrilton, Arkansas, where Sanders was or is employed. Furthermore, it is believed that Smith has or had an account at Petit Jean State Bank.

77.     Kahlua, Fox Farms, Forest Hill and Bird Dog were established by Kelley and others as shell entities to receive a portion of the funds misappropriated from First South.

78.     Carson Creek was established by Sanders and others as a shell entity to receive a portion of the funds misappropriated from First South.

79.     At least a portion of the funds Kelley received (directly or indirectly) was used to service an outstanding loan that Kelley or one of his companies had with a Florida financial institution.

80.     Upon information and belief, in some instances the funds were used to purchase real property and/or personal property in Arkansas, Mississippi, Alabama, and/or Florida. Although the amounts each of the Defendants received and how those funds were used has not been fully determined, the foregoing demonstrates that the Defendants, directly or indirectly, participated in the scheme to cheat and defraud First South out of substantial sums of money over a three-year period of time in scores of separate transactions.  First South has incurred substantial loss as a result of Defendants' actions.

### D. Discovery of the Scheme.

81.    Smith engaged in extensive measures to conceal his wrongdoing and keep First South in the dark by falsifying documents, manipulating corporate data and causing payments to be made on certain loans (or extending maturity dates of loans) to create the appearance of validly performing loans.

82.    First South learned of the scheme for the first time on or about March 19, 2010. First South instituted an investigation on or about March 19, 2010, to determine why a large number of First South annual meeting ballots for members of First South (whose loans originated from the Northport office) had been returned with unknown addresses.  First South employees Roger Chappell and Mike Pigg began reviewing selected files in the Northport office on March 19, 2010, and noticed a pattern in which one or more of the following deficiencies were identified in certain files:  (1) no telephone number could be found; (2) the address for the borrower was a post office box (rather than a street address); (3) funds advanced had been used to pay other First South loans with the same borrower or to purchase equipment from another First South borrower; and/or (4) no credit report or executed security documents were available.

83.    When Smith was confronted with these findings by Chappell and Pigg, he admitted the scheme, the approximate amounts of money involved and the identity of several of his co-conspirators.  Smith's employment with First South ended on March 19, 2010.  Smith provided further details of the scheme to Chappell and Pigg on March 22, 2010.

84.    One or more of the Defendants may have committed other acts that were fraudulent, illegal or otherwise actionable for which they may be liable to First South, but which have not yet been discovered.

85.    All conditions precedent to the filing of this Complaint have been performed or have occurred.

## COUNT 1:  FRAUD AND/OR MISREPRESENTATION
## UNDER ALA. CODE § 6-5-100 AND/OR COMMON LAW PRINCIPLES (SMITH)

86.     First South incorporates by reference the averments of paragraphs 1 through 85 herein.

87.     As described herein, Smith has defrauded First South as defined by Ala. Code § 6-5-100 and/or common law principles.

88.     Smith knowingly, intentionally and falsely misrepresented to First South that the fraudulent loans and advances described herein were, in fact, valid loans and advances for which First South was adequately collateralized and for which First South could expect to receive payment.    These false representations were material, involving collectively in excess of $2,680,000.00.  First South justifiably relied on the representations made by Smith, a long-time employee and office manager, by permitting the issuance of checks drawn on its account, authorizing wire transfers from its account and permitting Smith to continue in his employment.

89.     First South has been damaged by Smith's fraud in an amount in excess of $2,680,000.00.  First Smith's damages were proximately caused by Smith's conduct.

90.     First South is entitled to a judgment against Smith in a sum believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 2:  FRAUD/MISREPRESENTATION UNDER
## ALA. CODE § 6-5-101 AND/OR COMMON LAW PRINCIPLES (SMITH)

91.     First South incorporates by reference the averments of paragraph 1 through 90 herein.

92.     As described herein, Smith made false, material misrepresentations of existing fact to First South.  The misrepresentations were made willfully to deceive First South.  First South justifiably relied upon and acted on these misrepresentations to its harm, and its damages were proximately caused by Smith's conduct.

93.      Smith is guilty of legal fraud under Ala. Code § 6-5-101 and/or common law principles.

94.      First South is entitled to a judgment against Smith in a sum believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 3:  FRAUD/SUPPRESSION OF MATERIAL FACT
## UNDER ALA. CODE § 6-5-102 AND/OR COMMON LAW PRINCIPLES (SMITH)

95.      First South incorporates by reference the averments of paragraph 1 through 94 herein.

96.      As an employee of First South, Smith owed a fiduciary duty to First South.  Smith knowingly, willfully and intentionally defrauded First South by suppressing material facts that he had an obligation to communicate to First South with regard to his misappropriation and conversion of over $2,680,000.00 of First South's funds and his falsification of loan documents and other data he provided to First South.  Smith's concealment of material facts induced First South to authorize advances in an amount in excess of $2,680,000.  First South would not have authorized these advances but for Smith's concealment of these material facts and his misrepresentation of other material facts.   Smith's concealment and falsification of documentation hindered or prohibited First South from identifying Smith's fraudulent conduct.

97.      Smith's conduct violates Alabama Code § 6-5-102 and/or common law principles.

98.      First South is entitled to a judgment against Smith in a sum believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 4:  WILLFUL MISREPRESENTATION AND DECEIT
## UNDER ALA. CODE § 6-5-103 AND/OR COMMON LAW PRINCIPLES (SMITH)

99.      First South incorporates the averments of paragraphs 1 through 98 herein.

100.    Smith willfully, deceitfully and with full knowledge misrepresented to First South material facts concerning the scheme set forth herein by which he bilked First South of over $2,680,000.00.

101.    By making these misrepresentations to First South, Smith induced First South to advance over $2,680,000.00 on false loans, by which First South was injured.

102.    Smith's conduct violated Alabama Code § 6-5-103 and/or common law principles.

103.    First South is entitled to a judgment against Smith in a sum believed to be in excess of $2,680,000, together with post-judgment interest at the legal rate until satisfied.

### COUNT 5:  WILLFUL DECEIT AND SUPPRESSION<br>UNDER ALA. CODE § 6-5-104 AND COMMON LAW (SMITH)

104.    First South incorporates by reference the averments of paragraphs 1 through 103 herein.

105.    As an office manager for First South, Smith was in a confidential relationship and had a duty to inform and disclose to First South the misappropriation and conversion of First South funds and the manipulation and falsification of data and documents, for which he was responsible.

106.    Smith's misappropriation and conversion of over $2,680,000.00 of First South funds was material.

107.    By altering and/or manufacturing false documents and other data, Smith intentionally and willfully deceived First South by concealing his misappropriation and conversion of First South's corporate assets for his own use and that of the Non-Smith Defendants and other third parties.  Smith's conduct suggested a state of facts as to the status of certain loans that Smith knew at the time not to be true.  Furthermore, Smith suppressed facts

(despite the duty he had as an employee to disclose such facts) and provided information (or misinformation) of other facts that were likely – indeed, did – mislead First South.

108.   Smith intended to induce First South to continue to advance funds under his lending authority and to continue to employ him.  First South was damaged as a result of Smith's actions in an amount in excess of $2,680,000.00.

109.   Smith engaged in willful deceit and suppression in violation of Alabama Code of 1975, § 6-5-104 and/or common law principles.

110.   First South is entitled to a judgment against Smith for an amount believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 6:  EMBEZZLEMENT (SMITH)

111.   First South incorporates by reference the averments of paragraphs 1 through 110 herein.

112.   Smith fraudulently misappropriated First South's funds that had been entrusted to him as a loan officer and office manager.

113.   Smith willfully, intentionally, and with full knowledge of his actions stole funds from First South while employed as its office manager.  Smith appropriated for his own benefit at least some of the funds advanced by First South and deposited such funds in his personal account(s) and utilized those funds without First South's knowledge or consent.

114.   First South has been damaged by Smith's actions in an amount believed to be in excess of $2,680,000.00.

115.   First South is entitled to a judgment against Smith in an amount believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 7:  BREACH OF DUTY OF LOYALTY/FIDUCIARY DUTY (SMITH)

116.    First South incorporates by reference the averments of paragraphs 1 through 115 herein.

117.    As an employee and officer of First South, Smith owed First South the utmost duty to act in good faith and loyalty and had a fiduciary duty to act in First South's best interest and to refrain from acting contrary to First South's interests.

118.    Smith breached that duty by knowingly and intentionally engaging in theft of First South's funds over which he had control and diverting them to his own use and that of the Non-Smith Defendants and other third parties.  Smith has not returned to First South the funds he fraudulently stole from First South.

119.    Smith engaged in fraud or defalcation while acting in a fiduciary capacity with First South.

120.    First South has been damaged by Smith's conduct in an amount in excess of $2,680,000.00.

121.    First South is entitled to a judgment against Smith for a sum believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 8:  CIVIL THEFT/LARCENY (NON-SMITH DEFENDANTS)

122.    First South incorporates by reference the averments of paragraphs 1 through 121 herein.

123.    The non-Smith Defendants fraudulently and wrongfully took and carried away funds belonging to First South with the intent to convert First South's funds or deprive First South of its rights and possession of same.

124.    First South is entitled to a judgment against the Non-Smith Defendants jointly and severally, in an amount believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 9:  CIVIL CONSPIRACY TO DEFRAUD (ALL DEFENDANTS)

125.    First South incorporates by reference the averments of paragraph 1 through 124 herein.

126.    As set forth herein, Smith intentionally misrepresented the status of certain loans to First South.

127.    The non-Smith Defendants knew of the fraudulent scheme perpetrated by Smith, knew how some or all of the funds were misappropriated and received some or all of such funds with knowledge that they were not entitled to such funds.  Smith's fraudulent or otherwise wrongful conduct may be imputed to the Non-Smith Defendants and vice versa.

128.    Defendants combined for the purpose of accomplishing unlawful purposes or for accomplishing lawful purposes unlawfully, with actual knowledge and intent to bring about the purpose.

129.    Defendants' conduct toward First South was unlawful, oppressive, or immoral and conducted by unlawful, oppressive or immoral means.  Defendants' conduct toward First South was willful and malicious.

130.    First South has been damaged as a proximate result of Defendants' wrongful conspiracy to defraud First South.

131.    First South is entitled to a judgment against the Defendants, jointly and severally, in a sum believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 10:  CONVERSION (ALL DEFENDANTS)

132.    First South incorporates by reference the averments of paragraphs 1 through 131 herein.

133.    Defendants wrongfully took, detained and/or exercised dominion or control over First South's money inconsistent with the First South's rights thereto and without its consent.

134.    Defendants converted First South's funds to their own use.

135.    First South was damaged by the Defendants' actions.

136.    First South is entitled to a judgment against the Defendants, jointly and severally, in an amount believed to be in excess of $2,680,000.00, together with post-judgment interest at the legal rate until satisfied.

## COUNT 11:  RICO (ALL DEFENDANTS)

137.    First South incorporates by reference the averments of paragraphs 1 through 136 herein.

138.    Smith, Sanders and Kelley are individuals capable of holding a legal or beneficial interest in property.  Kahlua, Fox Farms, Forest Hill, Carson Creek, and Bird Dog are legal entities capable of holding a legal or beneficial interest in property.

139.    Defendants associated together as an enterprise for the common purpose of engaging in a scheme to defraud First South.  The enterprise comprised of Defendants was an ongoing organization over the period of at least three years with Defendants functioning as a continuing unit and each Defendant having established duties.

140.    Smith and Sanders' actions involved the banking business and, pursuant thereto, at all relevant times were engaged in interstate commerce.  As described herein, Defendants transmitted and/or received funds from the fraudulent loans across state lines.    Thus, the enterprise was engaged in and affected interstate commerce.

141.    As described in detail herein, Defendants devised a scheme to defraud First South for the purpose of obtaining money by means of false representations and on more than two occasions used the United States mail system over a period of at least three years in furtherance of this fraudulent scheme on First South, constituting mail fraud in violation of 18 U.S.C. § 1341.

142.    As described in detail herein, Defendants devised a scheme to defraud First South for the purpose of obtaining money by means of false representations and transmitted by means of wire in interstate commerce writings for the purpose of executing this scheme, constituting wire fraud in violation of 18 U.S.C. § 1343.

143.    As described in detail herein, Defendants knowingly engaged in a scheme to defraud First South, a financial institution.   Defendants' fraudulent actions resulted in Defendants receiving proceeds from numerous fraudulent loan transactions over a period of at least three years in furtherance of fraud on First South, constituting bank fraud in violation of 18 U.S.C. § 1344.

144.    Defendants knowingly conducted these financial transactions with the proceeds of unlawful activity obtained in the scheme to defraud First South to carry on the scheme of defrauding First South, constituting money laundering in violation of 18 U.S.C. § 1956.

145.    Defendants' illicit partnership, agreement, conspiracy, and enterprise wherein Defendants engaged in mail fraud, wire fraud, bank fraud, and money laundering constituted a pattern of racketeering activity.

146.    The predicate acts of mail fraud, wire fraud, bank fraud, and money laundering were related in Defendants' scheme to defraud First South and Defendants' ability to conceal these repeated fraudulent transactions poses a threat of continued criminal activity by Defendants.

147.   Defendants knew the result of these fraudulent transactions would result in financial gain to Defendants and a substantial financial loss to First South.

148.   As described herein, each Defendant derived income from this pattern of racketeering activity.   Defendants then used a portion of that income to further operate the enterprise in violation of 18 U.S.C. § 1962(a).

149.   Defendants' pattern of racketeering activity furthered the enterprise's common purpose to defraud First South through arranging fraudulent loans, the proceeds of which, as described herein, were received by Defendants, thus constituting acquisition and maintenance of an interest in and control of the enterprise in violation of 18 U.S.C. § 1962(b).

150.   As described herein, Smith conducted and the Non-Smith Defendants participated in the conducting of Defendants' enterprise through this pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

151.   Each Defendant agreed to commit the alleged predicate acts with a complete understanding that they would be acting together as an enterprise and knowingly agreed to further the enterprise's affairs through commission of these predicate acts.   Thus, Defendants' conspired with one another to violate 18 U.S.C. §§ 1962(a), 1962(b) and 1962(c) in violation 18 U.S.C. § 1962(d).

152.   First South has suffered injury to its business by reason of the racketeering activities of Defendants described herein and is entitled to actual monetary damages, in an amount to be proven at trial.   Said damages were proximately caused and foreseeable to Defendants and, as such, First South is entitled to all damages and relief provided by 18 U.S.C. § 1964, including but not limited to, treble damages and reasonable attorneys' fees.   Further, First South is entitled to declaratory and injunctive relief recognizing the same and prohibiting further such acts of racketeering on the part of Defendants.

## COUNT 12:  DECLARATORY RELIEF (ALL DEFENDANTS)

153.    First South incorporates by reference the averments of paragraphs 1 through 152 herein.

154.    Defendants engaged in conduct regarding First South's money that was fraudulent (either actually or constructively), an abuse of confidence, a commission of wrong, and/or unconscionable.

155.    Defendants will be unjustly enriched if they are allowed to retain the use and benefit of First South's money or property purchased with First South's money.  As participants or beneficiaries of fraud, Defendants, in equity and conscience, should not be permitted to retain legal title to funds in their possession or property purchased with the proceeds.

156.    First South is entitled to a judgment:  (1) declaring that funds derived from Defendants' scheme (or property purchased with First South's funds) are held in constructive trust for First South; or (2) declaring that First South has an equitable lien on all real or personal property acquired with funds misappropriated from First South.  First South is also entitled to a judgment authorizing it to take any and all measures necessary to liquidate said property in satisfaction of First South's claims herein.

## COUNT 13:  UNJUST ENRICHMENT AND INJUNCTIVE RELIEF
## (ALL DEFENDANTS)

157.    First South incorporates by reference the averments of paragraphs 1 through 156 herein.

158.    Defendants engaged in fraud, coercion, and/or abuse of a confidential relationship.

159.    The theft and misappropriation of First South's funds, and Defendants' use of those funds, constitutes unjust enrichment for the benefit of Defendants at First South's expense.

160.    Defendants are holding money (or property purchased with that money) which in equity and good conscience belongs to First South.  Alternatively, Defendants hold money (or property purchased with money) belonging to First South as a result of mistake or fraud.  It would be unjust to permit them to retain the benefit of said mistake or fraud.

161.    First South has been damaged by Defendants' conduct, in an amount believed to be in excess of $2,680,000.00.

162.    First South is entitled to a preliminary injunction and permanent injunction freezing Defendants' assets as determined by the Court to be held in constructive trust or impressed with an equitable lien.

## COUNT 14:  PUNITIVE DAMAGES (ALL DEFENDANTS)

163.    First South incorporates by reference the averments of paragraphs 1 through 162 herein.

164.    Defendants' conduct was deceitfully gross, oppressive or malicious.  Defendants committed these acts with the intention to deprive First South of property or legal rights or otherwise causing injury.  Defendants intended to commit these wrongful acts against First South without just cause or excuse, either with the intention to injure First South or its property or under such other circumstances as the law implies evil intent.  Additionally, Smith's conduct, including making advances on loans of innocent First South borrowers, was carried on with a reckless or conscious disregard of the consequences to First South and/or its borrowers.  Defendants' actions have subjected First South and/or certain of its borrowers to cruel and unjust hardship in conscious disregard for their rights.

165.    Defendants' conduct was gross, oppressive and malicious and was done with the intention of depriving First South of its money and legal rights.  Such wrongful conduct was without just cause or excuse.  Alternatively, Defendants' actions were reckless or in conscious

disregard of the rights of First South and innocent borrowers whose financial and personal information was used to perpetuate the scheme and that the scheme would likely cause such injury.

166.    Smith methodically and systematically abused his position of trust with First South to raid its coffers and deplete its resources for the benefit of himself and the Non-Smith Defendants via multiple transactions over the course of at least three years that were concealed from First South.   Smith engaged in a campaign of deceit through which he stole over $2,680,000.00 from his employer over a prolonged period of time, while manipulating and manufacturing data to avoid detection.  The Non-Smith Defendants participated in and benefitted from Smith's wrongdoing.  Defendants consciously or deliberately engaged in oppression, fraud, deceit, wantonness, or malice, as defined in Ala. Code § 6-11-20, with regard to First South by converting or otherwise misappropriating its funds in violation of its rights.

167.    First South is entitled to a judgment against the Defendants, jointly and severally, for punitive damages to the extent allowed under Ala. Code § 6-11-21.

WHEREFORE, First South requests judgment as follows:

A.    An award of all consequential damages incurred by First South;

B.    An award of punitive damages;

C.    An award of treble damages;

D.    An award of interest;

E.    An award of attorneys' fees and costs;

F.    A declaration that funds misappropriated from First South and/or property purchased with such funds are (1) held in constructive trust for First South; and/or (2) should be impressed with an equitable, authorizing First South to take any and all measures necessary to liquidate such property;

G.    A preliminary and permanent injunction freezing Defendants' assets as determined to be held in constructive trust for First South and/or impressed with an equitable lien in its favor; and

H.     Such other relief as this Court deems just and proper.

Respectfully submitted,

FIRST SOUTH FARM CREDIT, ACA

By Its Attorneys
WATKINS LUDLAM WINTER & STENNIS, P.A.

April D. Reeves

Jeffrey R. Barber (ASB No. 7540-B65J)
April D. Reeves (ASB No. 5398L44R)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 E. Capitol St., Ste. 800 (39201)
P. O. Box 427
Jackson, MS  39205-0427
Telephone (601) 949-4900
Telecopy (601) 949-4804
Email  jbarber@watkinsludlam.com
Email  areeves@watkinsludlam.com